IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

APL CO. PTE. LTD.,                    ) Case No. 09-3967 SC
                                      )
          Plaintiff,                  ) ORDER DENYING MOTION TO
     v.                               ) <u>DISMISS</u>
                                      )
KEMIRA WATER SOLUTIONS, INC.          )
(formally known as "Kemiron          )
Companies"), FAIRYLAND ENVITECH       )
CO. LTD.,                             )
                                      )
          Defendants.                 )
_____      )

## I.   <u>INTRODUCTION</u>

A carrier, APL Co. PTE. LTD. ("APL"), has brought this suit against a shipper, Fairyland Envitech Co. LTD. ("Fairyland"), and the intended recipient/purchaser of the shipment, Kemira Water Solutions, Inc. ("Kemira").[1] See Docket No. 1 ("Compl."). Kemira has filed a Motion to Dismiss, on the grounds that venue is improper in this district. Docket No. 17 ("Motion"). The Motion is fully briefed. Docket Nos. 23 ("Opp'n"), 24 ("Reply"). Having considered the papers filed by both parties, the Court concludes that this matter is appropriate for determination without oral argument. For the reasons stated below, the Court DENIES Kemira's Motion to Dismiss.

_____

[1] Fairyland has not participated in this Motion, nor has it appeared in these proceedings.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

## II.   BACKGROUND

APL is a Singapore corporation with its principal place of business in Singapore.  Compl. ¶ 4.  Kemira is a Delaware corporation with its principal place of business in Florida.  Id. ¶ 5.  Fairyland is alleged to be a company organized under the laws of Taiwan, which is also its principal place of business.  Id. ¶ 6.

APL alleges that Kemira contracted to purchase two cargoes of ferrous chloride from Fairyland.  Id. ¶¶ 7, 16.  According to APL, Fairyland tendered these cargoes to APL in late 2006, with the ferrous chloride packed into bags which Fairyland had packed or caused to be packed in ocean cargo containers.  Id. ¶ 7.  According to Plaintiff, it took the cargoes as Carrier under two Bills of Lading, under which Fairyland was the Shipper and Kemira was the Consignee.  Id. ¶¶ 8-10.  These Bills of Lading state that both the Shipper and Consignee (which are both grouped, together with Receivers and Holders, under the title "Merchants") "shall be jointly and severally liable to the Carrier . . . for the performance of the obligations of any of them under this Bill of Lading."  Id. ¶ 13.  They also state that Merchants "shall indemnify the Carrier against all claims, losses, damages, liabilities, or expenses arising in consequences of the Carriage of such Goods."  Id. ¶ 21.

After the first cargo arrived in California, APL discovered that the containers holding the cargoes "were leaking and hazardous."  Id. ¶¶ 18-19.  APL spent money "containing, assessing, cleaning, and removing the goods."  Id. ¶ 20.  APL has brought this suit against Kemira and Fairyland in the Northern District of California, and is apparently seeking to recover under the Bills of

2

Lading as contracts, and under the Comprehensive Environmental
Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.
§§ 9601 et seq.

Kemira seeks to invoke a provision in the Terms and Conditions
of the Bills of Lading ("Terms") that gives "Merchants" the right
to "refer any claim or dispute to the United States District Court
for the Southern District of New York."  Huber Decl.[2] Ex. B
("Terms") § 28(iii).  Kemira claims that this provision allows it
to render the Northern District of California an improper venue.
The relevant portions of the Terms and Conditions read as follows:

> 28.  Law and Jurisdiction
> . . .
> ii. Jurisdiction
> All disputes relating to this Bill of Lading
> shall be determined by the Courts of Singapore to
> the exclusion of the jurisdiction of the courts
> of any other country provided always that the
> Carrier may in its absolute and sole discretion
> invoke or voluntarily submit to the jurisdiction
> of the Courts of any other country which, but for
> the terms of this Bill of Lading, could properly
> assume jurisdiction to hear and determine such
> disputes, but shall not constitute a waiver of
> the terms of this provision in any other
> instance.
> iii. Notwithstanding Clause 28 i)[3] and ii), if
> Carriage includes Carriage to, from or through a
> port in the United States of America, the
> Merchant may refer any claim or dispute to the
> United States District Court for the Southern
> District of New York in accordance with the laws
> of the United States of America.

Id. § 28.

---

[2] Marisa G. Huber, Counsel for Kemira, filed a declaration in
support of the Motion.  Docket No. 18.

[3] Section 28(i) of the Bills of Lading state that the laws of
Singapore govern the terms, conditions, and interpretation of the
Bills of Lading.

3

**III. <u>LEGAL STANDARD</u>**

Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for improper venue.  This is the proper motion by which a defendant may seek to enforce a forum selection clause.  <u>Argueta v. Banco Mexicano, S.A.</u>, 87 F.3d 320, 324 (9th Cir. 1996).  The Court need not accept the pleadings as true, and may consider facts outside the pleadings.  <u>Murphy v. Schneider Nat'l, Inc.</u>, 362 F.3d 1133, 1137 (9th Cir. 2003).  However, "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." <u>Id.</u> at 1138-40.  "Federal law governs the validity of a forum selection clause." <u>Argueta</u>, 87 F.3d at 324.[4]  "A forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which we will conclude the clause is unenforceable." <u>Doe 1 v. AOL LLC</u>, 552 F.3d 1077, 1083 (9th Cir. 2009).

If this Court concludes that venue in this district is improper, then it "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been filed."  28 U.S.C. § 1406(a).

**IV. <u>DISCUSSION</u>**

    **A. <u>Kemira May Invoke Section 28(iii) Even Though It Is Contesting Its Status as a "Merchant"</u>**

APL contends that Kemira is attempting to "have its cake and

---

[4] Neither party has urged the application of Singaporean law to the forum-selection provision at issue.

4

1    eat it too," by invoking a right granted to "Merchants" under

2    section 28(iii) of the Terms, while maintaining the defense that it

3    was not a "Merchant" when it comes to adjudication of the merits of

4    the contract.  Opp'n at 3-4.  Kemira argues that it may waive the

5    defense that it is not a Merchant under the contracts for the

6    limited purpose of invoking section 28(iii) and invoking the forum-

7    selection provision.  Reply at 4-5.

8         Because APL is alleging that Kemira is a Merchant, Kemira and

9    this Court may rely on this allegation to conclude that Kemira has

10   standing to "refer" this dispute to the Southern District of New

11   York.  In resolving this Motion, this Court should not be required

12   to reach the merits of the dispute, and resolve at this preliminary

13   stage the question of whether or not Kemira is a Merchant.

14        This Court's conclusion is supported by Marra v. Papandreou,

15   in which a panel for the D.C. Circuit considered the question of

16   whether the country of Greece was barred from invoking the forum-

17   selection provision of a contract that it claimed had been revoked,

18   and from which it claimed immunity under the Foreign Sovereign

19   Immunities Act ("FSIA").  216 F.3d 1119 (D.C. Cir. 2000).  The

20   panel acknowledged that a court considering a forum-selection

21   provision "must also address issues that would be conventionally

22   understood as going to the 'merits' of a contract dispute."  Id. at

23   1122.  However, it also observed that a forum-selection provision

24   "is separate from the obligations the parties owe to each other

25   under the remainder of the contract.  Thus when a court determines

26   that a forum-selection clause is enforceable, it is not making an

27   assumption of law-declaring power vis-a-vis other provisions of the

28   contract."  Id. at 1123 (internal quotation marks and citation

omitted).  Greece therefore argued that its invocation of the forum-selection provision was "a waiver of its FSIA defense with respect to the clause" only, and the panel agreed.  Id. ("If the Greek government were sued by Marra for breach of two different contracts, it certainly would have the prerogative to waive a sovereign immunity defense with respect to one of the contracts and invoke that defense for the other.").

APL argues that this situation is different from Marra because Kemira is arguing (or rather, can be expected to argue) that it was not even a party to the Bills of Lading.  Opp'n at 3.  This is a distinction in substantive defenses, and this Court does not find the distinction to be significant.[5]  It would be impractical to attempt to design a test to determine which substantive defenses constitute waivers of forum-selection provisions and which substantive defenses permit defendants to retain their rights under such clauses.  Assuming that the allegations in the Complaint are correct, and that APL can recover from Kemira at all, Kemira is a Merchant and has therefore been granted the right to "refer" disputes to the Southern District of New York.  Whether or not Kemira is a Merchant under the contract is an as-of-yet undetermined question that should be adjudicated by a court in which venue is proper.

///

///

---

[5] Indeed, a defendant who claims that he was not a party to a forum selection provision is on no firmer footing than a party who claims to have revoked the contract in which a forum selection provision is found (as in Marra).  In either instance, the plaintiff will eventually be required to establish that the contract is valid and enforceable to prevail.

United States District Court
For the Northern District of California

**B.     Section 28(iii) Permits Merchants to Set the Southern District of New York as the Exclusive Jurisdiction**

The outcome of this Motion will depend upon the Court's interpretation of section 28(iii) of the Terms.  According to Kemira, section 28(iii) is a valid and enforceable forum selection clause, and by its terms, "APL's complaint should be dismissed once Kemira refers the case to New York."  Mot. at 5.  Its Motion therefore rests on the proposition that section 28(iii) is in fact an exclusive forum selection clause that conditionally (upon "reference" by a Merchant) mandates jurisdiction in the Southern District of New York.

APL contends that the clause is merely permissive, and not mandatory.  "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one."  N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995).  While an exclusive forum-selection clause will give defendants a basis for objecting to venue in any other jurisdiction, a permissive forum-selection clause does not prevent suits from going forward outside of the selected forum. See id. at 1036-37.

When read in isolation, section 28(iii) is ambiguous.  This provision purports to give Merchants the right to "refer any claim or dispute" to the Southern District of New York.  Terms § 28(iii).  APL acknowledges that, at the very least, this provision would allow a Merchant the right to bring suit against APL before a court in the Southern District of New York, and that APL would be powerless to contest personal jurisdiction in such cases.  See N. Cal. Dist. Council of Laborers, 69 F.3d at 1036-37

7

United States District Court
For the Northern District of California

1  (recognizing that by agreeing to forum-selection provision, party
2  may consent to jurisdiction in selected forum).  In other words,
3  this is at least a permissive forum selection provision.  APL
4  urges that section 28(iii) be read in conjunction with the
5  preceding provision, section 28(ii), which explicitly sets
6  jurisdiction in the courts of Singapore "to the exclusion of the
7  jurisdiction of the courts of any other country," and which
8  further allows the Carrier (i.e., APL) to bring suit or submit to
9  jurisdiction in any court of any country that it wishes.  Terms
10 § 28(ii).  APL urges this Court to read section 28(iii) narrowly,
11 as an exception to section 28(ii) that merely allows Merchants to
12 bring suit in New York, in lieu of Singapore, so long as the Bill
13 of Lading involves carriage to, from, or through the United
14 States.
15     The question is therefore whether the word "refer" permits a
16 Merchant to simply "bring," "file," or "submit" "any claim or
17 dispute" in New York, or whether Merchants may also "refer" a case
18 that has been brought against that Merchant, after it has already
19 been filed by APL in an otherwise-competent jurisdiction.  The
20 Court finds that the narrow reading urged by APL is inconsistent
21 with the language that allows Merchants to "refer any claim or
22 dispute" to the Southern District of New York.  Id.  Given the
23 broad scope of this language, the Court sees no reason why the
24 phrase "any claim or dispute" should not be read to include suits
25 that have already been filed.  It would have been simple to craft
26 language that clearly and explicitly gives the Southern District
27 of New York only permissive jurisdiction over APL, or that
28 provides Merchants with more limited rights to "file" or "bring

8

**United States District Court**
For the Northern District of California

1  claims" or "submit disputes" in that district.  However, APL chose

2  to draft the section using the far more ambiguous term "refer,"

3  with broad reference to "any claim or dispute," without

4  limitation.  Terms § 28(iii).

5      "[W]here language is ambiguous the court should construe the

6  language against the drafter of the contract."  Hunt Wesson Foods,

7  Inc. v. Supreme Oil Co., 817 F.2d 75, 78 (9th Cir. 1987)

8  (discussing forum selection clause).  While the Court finds APL's

9  narrow reading of the provision to be reasonable, it is not so

10 persuasive as to convince the Court that Kemira's broader reading

11 is unreasonable.  The provision is, at best, ambiguous as to the

12 Merchant's right to "refer" an existing lawsuit to the Southern

13 District of New York.

14     The Court therefore finds that section 28(iii) gives any

15 Merchant the right to object to venue in any suit not brought in

16 the Southern District of New York, by "referring" the dispute to

17 that district.  This is functionally equivalent to an exclusive

18 forum-selection provision.  The fact that the Merchant must

19 actively "refer" a case to the Southern District of New York is of

20 no import.  Any exclusive forum-selection provision -- no matter

21 how unconditionally worded -- is waivable, and therefore requires

22 an affirmative act before venue outside of the selected forum is

23 rendered improper.  Put otherwise, an exclusive forum-selection

24 provision will be of no effect until it is invoked, but once

25 invoked, it renders all venues except the selected venue

26 improper.[6]  The same is true with section 28(iii): Once a Merchant

27

28 [6] There is one respect in which section 28(iii) may differ from a
more traditional exclusive forum-selection provision (e.g., "any

**United States District Court**
For the Northern District of California

1  exercises its right to "refer" a dispute to the Southern District

2  of New York, that district becomes the exclusive forum in which

3  that dispute can be heard.

4      **C.**    **Whether Section 28(iii) Should Be Enforced**

5      Once this Court has established the existence of a valid

6  forum-selection clause, "the party challenging the clause bears a

7  'heavy burden of proof' and must 'clearly show that enforcement

8  would be unreasonable and unjust, or that the clause was invalid

9  for such reasons as fraud or over-reaching.'"  Murphy, 362 F.3d at

10  1140 (quoting Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15

11  (1972)).  APL argues that the interests of justice would be better

12  served by maintaining this suit in the Northern District of

13  California.  Opp'n at 10-12.  APL also argues that this Court

14  should not dismiss or transfer this suit because there is no

15  evidence that APL could assert its claims against either Kemira or

16  APL in the Southern District of New York, and therefore that

17  district is an "improper venue."  Opp'n at 9-10.

18      With regard to Kemira, the argument that the Southern District

19  of New York may lack personal jurisdiction is specious.  Any

20  defendant may waive any defense based on personal jurisdiction.

21  Ainbinder v. Potter, 282 F. Supp. 2d 180, 185 (S.D.N.Y. 2003).

22  There is no question that Kemira, having "referred" this suit to

23  the Southern District of New York, has waived any objection that

24  —————————————————————

25  dispute shall be determined by the courts of Singapore"):  It is
not clear that section 28(iii) should be construed as consent by a
Merchant to venue in, or the jurisdiction of, the Southern District

26  of New York, absent a referral by that Merchant.  This raises an
issue as to whether the Southern District of New York would be a

27  proper forum for the claims against Fairyland, which has not
exercised its right to "refer" this dispute to New York.  This

28  concern is addressed in the next section.

**United States District Court**
For the Northern District of California

1    it might have to jurisdiction in that forum.

2         Whether a district court in the Southern District of New York

3    would be willing to exercise jurisdiction over Fairyland is a much

4    closer question.  Arguably, Fairyland has consented to

5    jurisdiction in the Southern District of New York, by agreeing to

6    the Terms of the Bills of Lading, which give any Merchant the

7    right to "refer" cases to that jurisdiction.  However, Fairyland

8    has not asserted its right to "refer" this suit to the Southern

9    District of New York.  Given the ambiguous nature of the

10   provision, this Court cannot presume that a court in the Southern

11   District of New York would assert jurisdiction over Fairyland, by

12   construing its acceptance of the ambiguous provision as consent to

13   be sued in that forum.  In particular, this Court is concerned

14   that Fairyland has not purposefully directed any action towards

15   the Southern District of New York, or availed itself of the

16   benefits of doing business there, merely by accepting a limited

17   option to "refer" disputes to New York.  See Doe v. Unocal Corp.,

18   248 F.3d 915, 923 (9th Cir. 2001).  Nor can the Court conclude, on

19   the basis of the ambiguous provision, that Fairyland could have

20   reasonably anticipated being hailed into court there when another

21   "Merchant" chose to "refer" a dispute in which Fairyland was a

22   codefendant.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462,

23   474 (1985).  Fairyland did not draft the provision, and it should

24   not be held hostage to its ambiguities.  Consequently, it is not

25   clear that jurisdiction over Fairyland based on the Bills of

26   Lading alone would pass constitutional muster.

27        Because Fairyland has not yet participated in these

28

**United States District Court**
For the Northern District of California

1  proceedings,[7] the Court is aware of no facts that would,

2  independently of the Terms of the Bills of Lading, provide that

3  district with jurisdiction over Fairyland.  Although APL raises

4  this concern in its Opposition, Opp'n at 10, Kemira's Reply is

5  completely silent as to whether personal jurisdiction over

6  Fairyland would exist in New York.  The Court finds no basis for

7  concluding that the Southern District of New York would be able to

8  assert personal jurisdiction over Fairyland.[8]

9      The Northern District of California remains a possible venue

10 for APL's claims against Fairyland.  In this circumstance, where

11 venue may be improper as to only one defendant, "the interests of

12 justice require the trial court to consider the possibility of

13 transfer or dismissal of improper parties under F.R.Civ.P. 21 and

14 28 U.S.C. § 1406(a)."  <u>Anrig v. Ringsby United</u>, 603 F.2d 1319,

15 1325 (9th Cir. 1978) (considering case in which venue under 28

16 U.S.C. § 1391 was improper as to only certain defendants).

17 However, the claims against both Kemira and Fairyland are deeply

18 intertwined, and relate to exactly the same facts.  The suit

19

20 [7] Kemira claims that Fairyland has not been properly served.  Reply
    at 9 n.3.  However, APL has averred that Fairyland was properly
21 served when APL caused the Complaint, Summons, and related
    documents to be mailed to Fairyland "through the Clerk of the
22 Northern District California on November 4, 2009" in accordance
    with Rule 4(f)(2)(C)(ii) of the Federal Rules of Civil Procedure.
23 <u>See</u> Docket No. 9 ("APL Case Management Statement") at 2.  No proof
    of service has been filed with this Court.

24
25 [8] Although APL bears the burden of showing why enforcement of the
    forum-selection provision would be improper, under these
26 circumstances, it is sufficient that APL has raised legitimate
    concerns related to obtaining personal jurisdiction over Fairyland
27 in New York, which Kemira has completely ignored in its Reply.
    This Court will not place on APL the onerous burden of proving that
28 the courts of the Southern District of New York would actually lack
    jurisdiction over Fairyland, which may well rest upon facts outside
    of its possession.

United States District Court
For the Northern District of California

against Fairyland and Kemira is one in the same, and to allow the action against Kemira to go forward in New York while the same suit involving the same facts continues against Fairyland in this district would be inefficient, and would run the risk of duplicative litigation and potentially inconsistent judgments. This Court concludes that severance of this action would not be fair or reasonable.[9]

This Court therefore declines to enforce section 28(iii) at this time. Transfer to the Southern District of New York would be unreasonable where it is not clear that that district would have jurisdiction over an important party to this dispute, and where separate proceedings against each defendant would be inefficient or unduly burdensome. Moreover, because of the jurisdictional concerns outlined above, this Court lacks the authority to transfer this suit to the Southern District of New York under 28 U.S.C. § 1406, because it is not clear that the Southern District of New York is a "district or division in which [this suit] could have been brought." 28 U.S.C. § 1406(a). Dismissal of this suit, with leave to refile against Defendants in the Southern District of New York, would be similarly unreasonable. This Court must therefore DENY Kemira's Motion.

///

///

---

[9] APL also argues that, because of the lack of jurisdiction in New York, Kemira's referral of this suit to New York is not "in accordance with the laws of the United States," as required by section 28(iii). This clause appears to broadly prevent "referral" of a dispute to New York when the courts of that forum could not lawfully consider the dispute. This Court agrees that this clause serves as an independent basis for maintaining the dispute in California at present.

**United States District Court**
For the Northern District of California

## V.   <u>CONCLUSION</u>

For the reasons stated above, Kemira's Motion to Dismiss is DENIED.

In addition, the Court notes that APL has not filed with this Court a proof of service as to Defendant Fairyland within the 120-day limit set out by Rule 4(m) of the Federal Rules of Civil procedure.  APL is therefore ORDERED to fully explain the status of its attempt to serve Fairyland, and to show good cause for its failure to complete service within the contemplated time period. It may do so in its Case Management Statement for the upcoming March 19, 2010 Case Management Conference, which is due no later than March 12, 2010.  The March 19, 2010 Case Management Conference, set for 10:00 a.m. in Courtroom 1, on the 17th floor, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, remains on calendar.

IT IS SO ORDERED.

Dated: March 10, 2010

UNITED STATES DISTRICT JUDGE